INTERMODAL TRANSPORTATION SYSTEMS, INC. v. HUCKS
PIGGYBACK SERVICE, INC.

No. 7626DC267

(Filed 4 August 1976)

Contracts § 19; Landlord and Tenant § 5— option to purchase — invalid
    claim of right to possession — reasonableness of belief — consideration
    for novation

> There was a genuine issue of material fact as to whether a letter from plaintiff's agent giving defendant the right to purchase leased equipment for $1,000 at the end of the lease period was intended by the parties to be a part of the lease and, if not, whether such option was supported by consideration; furthermore, there was a genuine issue of fact as to whether plaintiff had an honest and reasonable belief that no such option existed and that it had a valid claim for possession of the equipment when defendant attempted to exercise the option so that plaintiff's relinquishment of its claim for possession constituted sufficient consideration for a novation extending the lease at a reduced rental and extinguishing the option by implication.

APPEAL by defendant from *Hicks, Judge.* Judgment entered 5 January 1976 and order entered 5 February 1976, Dis-

trict Court, MECKLENBURG County. Heard in the Court of Appeals 17 June 1976.

Plaintiff alleges that on or about 1 March 1969, plaintiff and defendant entered into a lease agreement for the lease by defendant of an Ottawa Commando Yard Hustler for 36 months at a rental of $400 per month beginning 1 March 1969; that in April 1972, plaintiff and defendant agreed to extend the lease for a two-year period at a monthly rental of $250 with defendant having the right to purchase the equipment for $500 on 1 March 1974; that this agreement was made in a telephone conversation and confirmed by letter of agreement; that defendant paid the $250 monthly rental for nine months but has refused to pay anything further. Plaintiff sought to recover $4,000 from defendant.

By answer, defendant admitted all the allegations of the complaint, but, by way of further answer and defense and by way of counterclaim, averred that at the time the lease of 1 March 1969 was entered into, plaintiff, "through its agent, Robinson Equipment Company, in writing and as an inducement to the defendant to sign the above referred to lease agreement to which said writing was attached, promised the defendant that at the end of the lease, the tractor may be purchased for One thousand dollars ($1,000.00)." Defendant further averred that "at the time of the so-called renewal the defendant brought the above representation that the tractor may be purchased for One thousand dollars ($1,000.00) to the attention of the plaintiff, who denied it and said that no such agreement existed. The defendant could not find its copy and Thomas Hucks, Jr. signed the said letter of agreement individually and not on behalf of the corporation, Hucks Piggyback Service, Inc., the party to the original lease." Subsequent to the signing of the letter of agreement, the letter of Robinson was found and a copy is attached to the complaint. Defendant prayed that it recover of plaintiff the sum of $1500 and that plaintiff "sign over and deliver to the defendant the title to the said tractor in conformity with its written representation which accompanied the lease agreement in the first place, . . . "

By reply, plaintiff denied the averments with respect to the Robinson letter.

After interrogatories filed by plaintiff were answered by defendant, plaintiff moved to amend its complaint and make

L. E. Robinson an additional party defendant, which motion was allowed. Robinson subsequently moved for summary judgment. His motion was allowed, and no exception was taken to the entry of order allowing his motion.

On 7 March 1975, defendant moved for summary judgment which specifically stated that it "relates only to plaintiff's action and not to defendant's counterclaim." On 26 March 1975, plaintiff filed motion for summary judgment dismissing defendant's counterclaim and granting it the relief sought in its complaint. Grounds for the motion were "that there is no material issue of fact to be tried in the cause; that a statement of the facts which are not in dispute is attached to this Motion captioned 'Stipulation of Facts', although the plaintiff does not contend that such stipulations (sic) has been agreed to by either of the defendants in this case; that the uncontroverted facts in this case establish that the plaintiff and the defendant, Hucks Piggyback Service, Inc. entered into a novation whereby the defendant became indebted to the plaintiff as claimed by the plaintiff in its cause of action and the agreement to convey as alleged by the defendant, Hucks Piggyback Service, Inc., in its couterclaim became null and void and of no effect."

The stipulation of facts attached to the motion consisted of the following:

"(1) That Intermodal and Hucks entered into an equipment lease in March of 1969. A copy of the lease agreement is attached to the complaint filed herein as 'Exhibit A'.

(2) That at the time the lease was forwarded to Hucks for execution, L. E. Robinson advised Hucks by letter that Hucks could purchase the equipment for $1,000.00 at the end of the lease. A copy of the letter is attached to the answer filed herein as 'Exhibit A'.

(3) That the statement that the equipment could be purchased for $1,000.00 was authorized by Palmer Bayer, who was then President of Intermodal and had the authority to enter into contracts in its behalf.

(4) That Hucks made payments to Intermodal pursuant to the terms of the lease agreement for the entire thirty-six month term.

(5) That Hucks attempted to exercise the option to purchase the equipment for $1,000.00 in April of 1972, but did not have a copy of the letter from Robinson.

(6) That Intermodal could not locate any record of a $1,000.00 purchase option and refused to sell the equipment for that price.

(7) That on April 21, 1972, D. J. Schwall, Vice President and General Manager of Intermodal, agreed with Thomas Hucks, Jr., President of Hucks, that Intermodel would lease the equipment to Hucks for two years commencing as of March 1, 1972, for $250.00 per month and that Hucks could purchase the equipment on March 1, 1974, for $500.00.

(8) That on April 26, 1972, D. J. Schwall wrote to Thomas Hucks, Jr., setting forth the agreement referred to above and Thomas Hucks, Jr., accepted same on May 1, 1972. A copy of the letter with the acceptance is attached to the complaint filed herein as 'Exhibit B'.

(9) That Hucks paid Intermodal the $250.00 monthly payments through December of 1972, but stopped making payments after locating a copy of the letter from Robinson.

(10) That Hucks would want to purchase the equipment for $500.00 if it should be determined that the April 26, 1972, agreement is binding on it."

The affidavit of Thomas R. Hucks incorporated the Robinson letter as follows:

"Dear Mr. Hucks,

We are enclosing three copies of the lease on your tractor. Kindly sign all three copies and return to us for forwarding to Intermodal.

At the end of the lease, the tractor may be purchased for $1,000.00.

Yours truly,
ROBINSON EQUIPMENT CORPORATION
L. E. Robinson (signed)"

Hucks also stated by affidavit that the letter was attached to the lease; that he read this letter prior to signing the lease although Intermodal had already executed it; that he signed

the lease believing that the statement in the letter was made in good faith by Mr. Robinson and that Intermodal had authorized him to make the statement; that all his dealings with respect to the leased equipment were with Robinson and not with Intermodal prior to signing the lease.

The affidavit of L. E. Robinson was to the effect that he wrote the letter and was expressly authorized by the President of Intermodal Transportation Systems, Inc., Palmer Bayer, to make such a representation and that "such representation and inducement was made prior to the signature on the contract of the officers of Hucks Piggyback Service, Inc., and the statement that at the end of the lease, the tractor may be purchased for $1,000.00 was offered as inducement for Hucks Piggyback Service, Inc., to enter into the said agreement."

The deposition of Palmer Bayer was taken and excerpts from his testimony are quoted:

" . . . There was an agreement between the Intermodal Transportation Systems, Inc. and Hucks Piggyback Service, Inc. with respect to this equipment after the term of the lease. I agreed that at the expiration of the lease in 1972, Hucks could acquire the equipment for $1,000. I agreed as president and chief executive officer of Intermodal under the authority that I had as president and chief executive officer that Intermodal would convey to him title of the equipment upon payment of $1,000 after the lease was concluded. In connection with that agreement, I communicated with L. E. Robinson of Robinson Equipment Corporation the terms of the lease that would be satisfactory to us so that he might in turn, as Robinson Equipment Corporation, communicate them to Hucks, both the terms with respect to the rental and the duration and other provisions and the agreement to make the equipment available to Hucks at the end of the lease for $1,000. I requested L. E. Robinson of Robinson Equipment Corporation to communicate the terms as I stated."

" . . . This was not a normal transaction; in fact it was a unique transaction which was not repeated before or after so long as I was president of Intermodal. Enlarging on that, Hucks was the contractor in Charlotte, North Carolina, for the Southern Railway in performing services at their piggyback yard where trailers and containers were placed

on and taken off flat cars. I was approached on the basis that it would be a service or a favor to the Southern Railroad if we were to provide this equipment to Hucks. I talked to the man who was in charge of this at Southern Railway, a man named Denver Eyler, and he confirmed that it would be a service to them and that Hucks was indeed their contractor and that he desired them to have this equipment."

" . . . In my judgment, this was a very profitable transaction to Intermodal. The basis on which I say that it was very profitable is that at the time the transaction was made, Intermodal had its own funds with which to finance it. The rate was calculated—I calculated the rate—on the basis of a substantial return on the funds that we were investing in the equipment. Without getting into a lot of detail about it, it was as if we had loaned money out at 17 percent, which was profitable.

This was the lease rather than a conditional sales contract. I told Mr. L. E. Robinson of Robinson Equipment Corporation, as to the purchase of this Ottawa Yard Hustler at the termination of the lease, that the rate had been set as to allow the equipment to be sold at the end of 36-months payment of $400 a month or $1,000 and that he was privileged to communicate that to Mr. Hucks.

I spoke to Mr. Hucks myself, by the way. I gave him the terms under which we were willing to buy this equipment. As to what I said about the purchase of this equipment, I said the same thing I have said before, that he could buy the equipment from us for $1,000 at the expiration of the lease. This was in my official capacity as president and chief executive officer of Intermodal. I spoke to him by telephone from my office in Hoboken. I did authorize Mr. Robinson to also make this representation to Mr. Hucks."

" . . . Robinson Equipment Corporation was acting on Intermodal's behalf in the transaction. . . . "

" . . . As far as the rental calculation is concerned, the purchase option was in fact a part of the overall lease agreement. It was a factor considered in determining the rent. I requested our attorneys to prepare this lease; I did not advise them of the purchase option. This was because it was

not to be included in the lease. But it was to be included in the rental calculations which were part of the lease. As to why I did not want it to be included in the lease agreement, it would not then, according to my understanding from my accounting people and my attorneys, be a lease agreement. . . . ”

"I did prepare a written memorandum for the file about this purchase option. When I left Intermodal, it was in Intermodal's files. There was a separate file set up on this particular lease. The memorandum was in that particular file. When I left, I didn't take any files with me. I didn't keep personal copies of things like that. I have no paper writing of any kind that makes reference to this purchase option."

" . . . this was a unique transaction before and after and was done almost as a courtesy to the Southern Railway. Our employees did not solicit this business. I handled it through Robinson Equipment Corporation from start to finsh."

The court, on 5 January 1976, "having considered the undisputed facts in the cause" concluded that the "Agreement entered into by the Plaintiff and Defendant in April 1972, constituted a novation which by implication extinguished any prior option to purchase the equipment which the Defendant might have had"; that "there are no material issues of fact to be tried in the cause" and entered judgment for plaintiff for $4,000 plus interest and provided that upon payment of the judgment by defendant, plaintiff would convey title to the leased equipment to defendant. Defendant appealed.

*Fairley, Hamrick, Monteith & Cobb, by Laurence A. Cobb, for plaintiff appellee.*

*Jones, Hewson & Woolard, by Harry C. Hewson, for defendant appellant.*

MORRIS, Judge.

Both parties now concede that there was a letter to defendant offering the privilege of purchasing the leased equipment for $1,000 at the end of the term of the lease. Although in its reply, plaintiff denied that Robinson was acting for it, in the

stipulation of facts submitted by plaintiff and signed by its counsel, it was admitted that the statement was authorized by Palmer Bayer, the then president of plaintiff who had the authority to enter into contracts on behalf of plaintiff. Plaintiff contends, however, that the letter was, in legal effect, a mere promise unenforceable because not supported by consideration; was not a part of the lease; and even if the letter was supported by consideration, the new agreement constituted a novation because it was supported by consideration. Plaintiff contends that defendant received benefits in that it obtained the right to continue in possession of the equipment and at reduced rental and was relieved of any obligation to pay the $1,000. On the other hand, the extension of the lease constituted a detriment to plaintiff in that it gave up its right to obtain possession of the equipment at the end of the original lease.

To us, the questions involved here cannot be so simply disposed of as plaintiff would have us believe. Hucks says that he signed the lease agreement because of the promise that he could purchase the equipment at the end of the term, having read and relied upon the letter before signing the lease. Bayer says the terms of the letter were not included in the lease because that would have changed the lease into a purchase agreement. But he testified that the purchase option was "in fact a part of the overall lease agreement," was a factor in determining the rent, and although not to be included in the lease, was to be included in the rental calculations which were part of the lease. Plaintiff takes the position that the Robinson letter was not intended to be a part of the lease. Bayer also testified that the transaction was quite a profitable one for plaintiff, that it was a unique transaction for the plaintiff and that it was entered into primarily because Southern Railway wanted Hucks to have the equipment, Hucks being the contractor in Charlotte for Southern in performing services at their piggyback yard where trailers and containers were placed on and taken off flat cars. Intermodal normally did not lease the powered equipment covered by the lease with defendant, but normally handled trailers and containers for use in marine services without an engine.

It appears first that there is a genuine issue of fact as to whether the Robinson letter was intended by the parties to be in fact a part of the lease transaction.

In *Trucking Co. v. Dowless*, 249 N.C. 346, 106 S.E. 2d 510 (1959), the parties executed a trip lease agreement. The signa-

tures of the parties appeared on page 3. On page 4 there appeared an indemnity clause under which plaintiff claimed the right of indemnity. Between the signatures on page 3 and the indemnity clause, there appeared receipts for equipment to be signed by plaintiff only. At the beginning of page 4, there appeared blanks for information with respect to the driver and his helper, including a doctor's certificate as to their physical condition. The pleadings and evidence raised the question of whether the indemnity clause was a part of the lease. The Court held it should be decided on the basis of the intentions of the parties and was a question for the jury, and not to be answered as a matter of law.

If not a part of the lease transaction, then there exists a genuine issue of fact as to whether it was supported by consideration.

If the Robinson letter was indeed a valid binding obligation on the part of plaintiff, was the extension agreement supported by consideration sufficient to support a novation?

"It is the general rule that in absence of fraud or other invalidating circumstances, the surrender of a disputed or doubtful right or claim is a sufficient consideration for an agreement compromising or settling the claim, or for an executory contract. As a general rule, however, the relinquishment of a claim that is without merit or foundation in law or equity, or in fact, is not sufficient consideration for a contract. Therefore, the relinquishment of an invalid claim is ordinarily insufficient consideration for a promise. Where, however, the claimant has an honest and reasonable belief in the validity of an invalid claim, the relinquishment of such claim is sufficient consideration to support a promise." 17 Am. Jur. 2d, Contracts, § 111, pp. 457-458.

Defendant's material presented on motion for summary judgment indicates that at the end of the original lease, plaintiff was advised that defendant wished to exercise the option to purchase, but plaintiff refused. Plaintiff's material indicates that it was not then aware of any such option. Bayer's testimony was that he left a file on the transaction containing a written memorandum when he left plaintiff's employ. Plaintiff says it gave up a valid claim to possession of the equipment. If the Robinson letter was binding, the claim was invalid. There is

at least a question of fact as to whether plaintiff's belief in the validity of the claim was an honest and reasonable belief.

For the reasons stated, it is our opinion that this litigation was too early removed from the consideration of the jury.

Reversed.

Judges VAUGHN and CLARK concur.